Our next case on the call of the docket is agenda number two, case number 113, 140, People v. Hale. Counsel for the appellant, please proceed. Good morning, Chief Justice Kilbride, honorable members of this court. I am Assistant State's Attorney Annette Collins from Cook County. I represent the people in the matter before this court. In this case, the appellate court reversed the defendant's conviction and remanded for a new trial. The defendant was convicted in a jury trial of two counts of attempt murder and two counts each of aggravated battery of a firearm and aggravated discharge of a firearm. He was sentenced and at the sentencing hearing he complained about his attorney's conduct, primarily about his attorney's failure to file a motion to suppress. On appeal from that ruling, the appellate court remanded for a crankle hearing to explore those claims that the circuit court hadn't addressed. On remand for the first time, this defendant all of a sudden complained about his attorney's conduct at plea negotiations that occurred before trial. Though in his pro se pleading, this respondent never stated that he would have pled guilty had his attorney provided better advice. Rather, it was upon appointment of counsel that the first time a pleading was filed regarding defendant's alleged decision to plead guilty absent the deficient advice. The matter went to hearing, there was countervailing testimony from the defendant and from his counsel, and the circuit court expressly believed defense counsel. On appeal, the appellate court reversed and instead finding ineffective assistance of counsel held that the attorney had provided deficient advice because he had merely told defendant that consecutive sentences were possible. That he allegedly didn't tell him that they were mandatory. And the appellate court also held with respect to prejudice that this advice, quote, made it impossible for defendant to make a knowing involuntary decision regarding the state's plea offer. For authority, the appellate court relied exclusively on this court's 1997 decision, People v. Curry. A Sixth Amendment case in which this court addressed for the first time the application of the Sixth Amendment to plea negotiations that result in plea rejections. This court in Curry held that in order for a defendant to prove ineffective assistance of counsel, that defendant must both prove, first, that his counsel's advice was unreasonable and clearly erroneous. And second, a defendant must prove, not that his plea rejection was not knowing, but rather must prove that absent the deficient advice of counsel, the defendant would have pleaded guilty but for that advice. Now we brought our PLA in this case based on our position that the appellate court had misread Curry and misapplied it. However, during the pendency of the PLA before this court, the U.S. Supreme Court issued two decisions directly on point. Those two decisions control the resolution of this case. And to the extent that Curry deviates ever so slightly from the decisions from the U.S. Supreme Court, this court must follow it. So the threshold issue in this case has now become, how do we change Curry to stand in line with the U.S. Supreme Court's view of the analysis in a Sixth Amendment case relating to plea negotiations that result in plea rejections? This court must follow the U.S. Supreme Court. It is the final arbiter of the Federal Constitution. This case involves a Federal constitutional claim. There is no state counterpart claim in this case. The Illinois Constitution is not at play in this case, nor was it in Curry. Having said that, a comparison between this court's decision in Curry and the U.S. Supreme Court's recent decisions in Missouri v. Fry and Laffler v. Cooper reveals only really one distinction in terms of the Sixth Amendment analysis. That distinction involves this court's prejudice analysis. This court, as well as the U.S. Supreme Court, both agree that a defendant in order to show prejudice must show that, absent the deficient advice of counsel What if those three cases establish a reasonable probability standard and not a but-for? It is a reasonable probability standard, Your Honor, but it also contains the but-for statement. Both Curry and the Laffler v. Cooper and Missouri v. Fry decisions say the defendant must show a reasonable probability that, but-for the advice of counsel, he would have pled guilty. So I agree with you, Your Honor, it is a reasonable probability. However, there has to be a connection between the deficient advice and defendant's decision to reject the plea. If a defendant is insistent on going to trial and exercising his right to trial, defense counsel could provide the most deficient advice whatsoever, but so long as it didn't lead the defendant to reject the plea, there is no Sixth Amendment claim. Now, there are definite agreements between this court and the U.S. Supreme Court with respect to this particular prejudice component. However, the U.S. Supreme Court takes two steps further. The U.S. Supreme Court demands that a defendant also show a reasonable probability that the state wouldn't have withdrawn the plea offer, and also a reasonable probability that the judge would have accepted it, ratified it, and the plea would have been executed. The reason that the U.S. Supreme Court added these additional burdens is explained in the decisions itself. Both decisions recognized that the prejudice in this type of Sixth Amendment claim is the difference between the sentence that a defendant is serving at trial and the sentence that he would have been serving had he accepted the plea. And the sentence he would have been serving is not just based on the acceptance of the plea, but ratification. The U.S. Supreme Court decision Laffer v. Cooper stating that was from a Michigan State decision. And like Michigan, Illinois has Supreme Court Rule 402, which requires a judge to review the agreement between the parties. And the judge must make an agreement to it. The judge is not bound by that decision between the parties to plea offer and plead. In fact, the judge can reject it or the judge can sign off on it. Because the Illinois rules allow a judge to do so, it's necessary for a defendant to make that showing. I see a question about the plea negotiations in this case. Absolutely. The evidence from the Defense Council, I believe, was that the state had offered 15 years. Yes. And what is your understanding of that? Is that an illegal sentence? Not at the time it is now. And I'll explain. Not at the time it was not. Now it is. And I'll explain why. So there was no ineffective assistance of consequence at all? Not at that point, no. The 15-year offer at that point was presumably and evidently based on this Court's decisions pre-Hauschild and Sharp. People v. Morgan had been issued in January 2003. Morgan had rejected the add-ons. And that way the attempt to murder with a firearm only carried a range of 6 to 30. So this is an add-on issue and not a consecutive versus current? No. No, Your Honor, not at all. I thought your question concerned whether that 15 years is available now. No, not at the time. When the state made the offer, was it a valid sentence? Yes, it was. Absolutely, it was. And the issue with respect to the consecutive sentencing concerns what happens after trial. If he's found guilty of all offenses, they have to run consecutive. However, he pleads to only one attempt murder, 6 to 30, 15 years is within that range. So part of the agreement was the state would dismiss the other charges? I don't know what that part of the agreement was. What the agreement was is the defendant would plead guilty to 15 years. So one way to look at it that was argued here is the state's offer was an illegal sentence. That 15 years could not have been a void sentence. That's the argument that's been made, right? No, Your Honor, and the reason is that I think we all are presuming that the 15-year offer was to a single count of attempt murder. If it wasn't to a single count of attempt murder, it very well could have been to a 7 1⁄2 and 7 1⁄2 consecutive. There's a number of ways to make 15 years in 2003 an entirely legal sentence, because there was no available firearm enhancement at the time. And in our briefs, we make the distinction that that 15-year sentence now, today, because of Hostile and Sharp and the revival of the add-ons, would be below the mandatory minimum, 21 years. Which actually brings me to the major point in this case with respect to the prejudice component. There's a clear dispute in the hearing testimony that was before the trial court, and the trial court's ruling was not against the manifest weight of the evidence in this case. Defendant testified that his counsel only told him that the range that he would face after sentencing and trial was 6 to 30, and that it would all run together. In other words, it was only consecutive sentences that he was facing. That was defendant's testimony. Defense counsel's testimony, on the other hand, was that he told the defendant about mandatory sentences. He discussed with the defendant the possibility of mandatory sentences. And in fact, he did so on numerous occasions. However, defendant didn't want to plead, according to the defense counsel. The defense counsel said defendant wanted a trial. This is different also from defendant's testimony where he stated at the hearing that he would have been inclined had he known that he could get 40 years. This sets up a question of credibility that the circuit court resolved in favor of defense counsel and against defendant, and it's not against the manifest weight of the evidence in this case. And the reason it's not against the manifest weight isn't just found in the hearing testimony itself. The entirety of the record discloses that this defendant was not indeed inclined to plead guilty. And it isn't just the fact that he maintained his innocence. It's the doggedness and severity of his claim that is significant in this case. He continually pre-trial, during trial, post-trial said he was not the shooter. He claimed that his passenger in the vehicle who happened to have been deceased at the time of trial was the actual shooter. He got a defense witness to recant her statement to say that Jeff Smith was the shooter, not the defendant. And he also refused to acknowledge or apologize to the victim because he had nothing to do with this. He wasn't the shooter. In combination, all of these factors and considerations in the record disclose that this defendant's hearing testimony was not enough to establish the necessary prejudice component. It was self-serving. It was unsupported by counsel. And nowhere does the record support it. And for that reason, he didn't prove the necessary prejudice element. Going back to the remedy in this case, this Court's remedy in the event that this Court even does consider that he's met his claim and that it remains and he's able to meet additional claims of showing that defense counsel was, excuse me, that the trial judge would have accepted the plea. If he's able to make that showing, the remedy is at issue in this case because the U.S. Supreme Court has suggested additional remedies beyond what this Court had found and allowed in People v. Curry. This Court is arguably not bound to follow the U.S. Supreme Court's suggestions of remedies. The remedy to a federal violation, unlike an actual analysis, is not something that this Court is mandated to follow. So the option is available to this Court. And we simply ask this Court to consider those potential available remedies to this type of claim. This Court in Curry held that the correct remedy was simply to remand for a new trial with the option of renegotiating or for a new plea. The U.S. Supreme Court, by contrast, suggests that the available option should be weighed not by the courts of review, but by the trial court. And the trial court, after hearing all of the evidence and looking at the equities on both sides of the equation, should consider a number of available options, including not just the remedy that this Court fashioned in Curry, but also an additional remedy of perhaps resentencing, an original sentence somewhere consistent with what defendant expected, the plea that was offered, sentence, or no remedy at all, because the U.S. Supreme Court recognized that a defendant is never really in a position of trying to figure out exactly where he would have been from that first moment of the plea offer. In fact, a post hoc remedy is almost impossible in this case to mirror the circumstances pre-trial. These remedy suggestions by the U.S. Supreme Court give weight to the equities of the situation, and it should be considered by this Court. I believe that I need to mention, just in passing, the 15-year sentence, and perhaps explain that a little bit further, Your Honors. The 15-year sentence at the time was likely a sentence on a single count, or an offer, was likely on a single count of attempt murder. Six to 30 was the range at that time, because the firearm enhancements that were in the statute were not likely on a single count. They were not legally available because of the issuance of Morgan. Morgan was issued in January 2003. This trial happened in December, I believe, 2003. So there is likely that the offer was made sometime in the period between those two events. And we would not have been able to legally impose those sentencing add-ons, because they have been declared unconstitutional because of cross-comparison analysis under the Proportionate Penalties Clause of this Constitution. As a result, 15 years was a good sentence then. And, in fact, after trial, this defendant was sentenced to an aggregate 40-year term, 30 and 10. That was also a good sentence at that time. I'm very confused. I'm reading the appellate court decision. I have to say, I never saw the word hostile or sharp. The entire framework of the appellate court decision is, this is a dispute about whether or not consecutive sentences were available or not. I absolutely understand, Your Honor, and the appellate court did not address it, because that issue, the question of remedy, and sort of a question of reinstitute that original offer. I don't see it that way. What I'm seeing in the appellate court, and maybe the appellate court is wrong, but the appellate court is setting up the issue of whether or not counsel's advice was substandard, because counsel did not accurately portray consecutive versus concurrent sentencing. And that has nothing to do with Sharper House. Exactly. You are absolutely right. Hostile and sharp concern the remedy, the appropriate remedy. Defendant is asking this Court to force the State to reoffer that 15 years. I'm going back to what is the problem here. The argument in the appellate court was, counsel was ineffective because he gave advice to his client that consecutive sentences were not available, basically. So my initial question to you was, was counsel correct in that or not? Were consecutive sentences available or not? Yes, they were. They were, in fact, mandatory depending on how the evidence came out at trial. They were indeed a possibility. That's what counsel told defendant. He said consecutive sentencing is possible. That was what the appellate court had a problem. But that would be invalid? Is that the word he uses? He said that they would be a possibility, but he believed that they wouldn't have been appropriate considering King principles. If I can explain a little bit, and again, I don't, I can't get into defense counsel's mind. This was not in the hearing testimony, but as best as I can ascertain from this record and the statements of defense counsel both at the hearing and earlier when he was requesting that the court run these sentences concurrent. Defense counsel saw defendant's act, which was a single shooting at a vehicle, multiple shots in kind of a quick succession. He saw that as a single act, Justice Tice. So what this defense counsel believed was that maybe if the state doesn't apportion these shots among the various victims, it's going to be a single act and maybe they should run concurrent. And I make a distinction, and I point that out only in so far as in contrast, the defense counsel in Curry specifically was unaware of the fact that there was even a possibility of running consecutive. As was the state. As was the state. And it wasn't until the end. So why, when you're saying that, I might have a question, just a basic question. What is the allegation that the defense counsel was ineffective? And apparently what we're saying here is that he misunderstood consecutive versus concurrent. You're talking about something else now, and I want to get kind of back to what is the nugget here. And the question I have is, you say that the only way to interpret this is that the state was going to dismiss one of the charges. I don't see anyone discussing that anywhere. What I see, at least from the appellate court decision, is the understanding that the offer was 15 years. Which is a good offer. And the state and the defense understood that to be two charges apparently running concurrently. I mean, that's why we would be talking about consecutive versus concurrent if there was only one charge. Because we're comparing what happens after trial. The advice of counsel was, if you go to trial, this is what could happen to you. That's the deficient advice. It has nothing to do with the plea offer. It's a comparison between, here you've got 15 years on the table. Do you want to roll the dice on this 15 years now and take it and give up your right to a trial?  And once you go to trial, that's when the consecutive versus concurrent question arises. Because it's... Your time has expired, but I'll ask Justice Tice if you have any further questions. Thank you. Good morning, Your Honors. Let me start you with a question. Absolutely, Your Honor. After you give us your name. My name is Robert Stevenson. And I represent James Clearthorne Hale. To follow up, if we're talking about a remedy, if you should prevail, we talk about a remedy. Cooper seems to say that the district court ordered specific performance of the original plea offer. Cooper ordered the state to reoffer the plea. Can that be done here? I believe it can be done, Your Honor, yes. Even though there's a 15-year add-on mandatory now subsequent to Hochschild? I think the state refers to it, I think in their reply brief, as scrubbing the factual basis. But this is a practical part of the criminal justice system in Illinois and Cook County and always has been. You can negotiate around terms. You can negotiate around a factual basis. So it would certainly be a valid sentence for the state to remove the firearm from the factual basis they present to the court. Would they have to recharge and remove it from the charge? I don't know if I know the exact answer to that question. Certainly if the indictment compels it. The case law, as I understand it now, is if the indictment and the factual basis compel it, then the sentence is mandatory. Would they have to recharge? I'm not sure if they scrubbed it from the factual basis. I think it would be a valid sentence that could be imposed in any case. And I can give you an actual example. Last year, this court decided people would be Stanley Rice. And when that was remanded, I represented an individual who was serving a natural life sentence for two counts of first-degree murder. At Stage 3 hearing, the prosecutor offered to withdraw both charges, only have my client plead guilty to one count, and give him time served. So it's still a valid sentence, Your Honor. It just depends on how we get there. Speaking of remedies, Mr. Stevenson. Yes. What about the argument made by Ms. Collins that under Lafleur and the other one, Frye, that the proper remedy is just to remand to the trial court to see whether or not, have a hearing on whether or not the state would have stuck with the agreement and the judge would have accepted? Well, I've got a couple of things to say about that, Your Honor. First of all, in my brief, as you all know, we argue that you should apply Curry and stick with that standard. Since Lafleur's come down, this court obviously has had to. Let's stop for a minute on that. How do we apply Curry in light of the U.S. Supreme Court precedent? Well, I think you can still, this court can always offer greater protections now. Admittedly, it has gone lockstep under the Sixth Amendment with the Supreme Court in the past. And even if it chooses to in this case, I think the ultimate result of this particular case is a foregone conclusion. Yeah, that's what I'm having difficulty with. I mean, you've now approached the issue that I want to address. Has the defendant ever asserted a claim under the Illinois Constitution's right to counsel provision? Yeah. Your Honor, I believe he has made it. I would have to check the record on that, Your Honor, but I believe that that was implicit in his critical hearing. I don't think he has. But let's, so let's assume for a minute that he has not. Why are we even talking about Cabayas and departing from federal precedent? Doesn't that come into play only when we are construing a claim under the state constitution? I would agree with you completely on that point. And so if we're going to, if this court's going to adopt Lafleur, I would simply want to discuss several factors I think ought to be aware of when implementing it so it makes it a workable opinion for the circuit court to apply. So just so I have that straight, you're agreeing that questions arising under the Sixth Amendment, which would be this question, especially if there isn't a Cabayas issue and there is not a state right to counsel issue, then the U.S. Supreme Court decisions are controlling. Assuming there is not a state right that's been asserted, the Sixth Amendment, yes, it would be controlling on this court's analysis. All right. So then do you take issue, going back to the first question, do you take issue that the proper remedy, if we're going to follow Lafleur and Frye, is that there is a hearing on whether or not the state would have stuck by the deal and whether the judge would have accepted it? Isn't that what Lafleur and Frye talk about? Absolutely. And I'd love to discuss both those requirements with you because if, when this court issues its opinion, it's going to have to get a lot of clarification on how to decide those precise factors. And I want to be clear. The factor on whether or not the state would have stuck by their opinion is not simply whether or not they would have withdrawn it, but whether or not there was an intervening circumstance that would have caused them to withdraw it. Intervening by definition means coming in between. This is not something that should be ad infinitum. The intervening circumstance the state must point to should occur post-offer and before rejection. By the time you get back on a hearing on this, several years could have passed. They have in this case. The state should not have the benefit of looking out over the legal history that's developed over the course of those years and picking out a few instances and saying, well, based on this, we would have withdrawn the plea. I think this court has to limit the time that intervening circumstance can arise between the time the offer was made and the time the defendant rejected it. I think that's one of the most critical things. The second thing is when it comes to what the state knew at the time, they've alleged on 47 and 48 of their brief that they believe the sentencing range at the time was clearly 6 to 30. That's disputed by almost every fact that's available, Your Honor. And this is why I think they're trying to say that it was a 15-year offer based on their understanding of 6 to 30 at the time. But in fact, they knew because there had been a bond hearing of my client's criminal history. They knew he was extendable. They knew that one of the victims was in a coma for three months, severe bodily injury, mandatory consecutive. So they knew at the time they made this offer that my client, regardless of the add-on, was facing a sentence of 12 years minimum, 90 years maximum. Now, the state says, well, it's irrelevant that the defense counsel didn't talk about the possibility of being extended because my client wasn't extended. We have to view this deficient performance in view of the defendant at the time. He's told by his lawyer that he's got a 15-year offer and he's facing 6 to 30. And he counters with 12. That's close. And in fact, he's facing 12 to 90. And the reason it's important that he be told about the extended term is because the reason we require lawyers to inform on the offer is so that they can make a rational decision. You cannot make a rational decision if you don't know what you're facing. And apart from the add-on entirely, my client was facing 12 to 90 and he counted with 12. Can you tell anything from the record about details of the state's plea? Was there something about dismissing one of the charges? I think it would all be pure conjecture, Your Honor. There's no indication whatsoever how the state thought they would get to that number. Again, I think if we take the add-on as a separate thing, being that the sentences were 12 to 90, it could have been done at the time. But there is no indication they were clearly going to drop one of the counts or not drop one of the counts. The evidence against my client was overwhelming. I mean, he's got two eyewitnesses that identified him multiple times, and his only witness is an alibi witness that previously gave a statement implicating him in the shooting and didn't flip until after her boyfriend died, and then she said, oh, it was my boyfriend. The evidence was overwhelming. My client was facing 12 to 90. He got absolutely deficient advice. He was facing 12 to 30. Now, so we've addressed sort of the first part about whether or not the state would do it, and I really do think you need to limit that time frame of plea offer to rejection if they're going to claim an intervening circumstance. I think the more difficult question under Lafleur becomes, what about how do you show that the trial judge would have accepted the plea? And the first thing I think this Court should note is on page 1389 of Lafleur, Justice Kennedy specifically left open the constitutional question of whether the trial judge on remand has to disregard all of the information that she learned post-rejection of the plea, and he specifically left this open as a constitutional matter. In other words, at the time the judge would have heard the plea, we know how busy Cook County is, criminal courts building. Many of you have personal experience there. I certainly do. The judge likely would have known very little about this case, certainly the basics, but nowhere near the extent of having heard testimony, an entire trial, evidence in aggravation. So Justice Kennedy specifically left open whether or not the judge needs to disregard this information as a constitutional question. I suggest to this Court that the best way to avoid that as a constitutional question and the best way to put all parties back in the position they would have been, at least as close as possible before counsel's ineffectiveness, would be to remand it to a new trial judge because there's no way to unring the bell. At some point the defendant said he would have been inclined to accept the state's offer. Yes, Your Honor. Is that sufficient to establish reasonable probability? Yes, it is, Your Honor. There's a couple of factors I think we look at when we show the prejudice. And, yes, he said I would have been inclined to accept it had I known they could have been consecutive. I think you can then amplify that by saying, well, what would he have done if he had actually had 90? But even in Curry, this Court said we're not going to look to his words alone. And we have a counteroffer of 12 years on 15. They were three years apart when he thought the max was 30 years at 85%. Had he known, had he received competent advice from defense counsel that his max was 90 at 85%, that competent advice I think we can view as bridging the gap between him rejecting this offer and him accepting this offer. And I don't want you to look at his words. I mean, Curry specifically says you can't look simply to the defendant's self-serving words. But look to his counteroffer of 12 years on a 15. And note the fact that he made that counteroffer while under the belief that he faced a maximum of, if my math is correct, 24 years roughly served, 30, 85%. If we were to look at his statement, he also suggested that before there would be any action, he wanted a 50% per day, per day credit. Did he not? I believe he did say that as well, Your Honor. I want to get to a more basic point, though, and help me understand this. For you to prevail, you have to show ineffective assistance of counsel. Yes, Your Honor. So if we agree that not telling him about the consecutive mandatory and saying 15 and maybe a possibility of consecutive, that's ineffective, falls below the standard, do we determine whether this defendant suffered prejudice? One thing we have to look at is would he have been inclined to accept the offer? We have something in the record, and that may be questionable, but that's one thing to look at. Do we have to determine whether the prosecutor would not have withdrawn? Do we have to determine whether the trial judge, before we can say the second prong of Strickland has been satisfied? It seems to me you're saying we sent it back to the trial court to do this, but then do we not need to make a finding of ineffective assistance to grant any relief? It's admittedly somewhat of a complicated situation, given Laffler. However, my client did raise this below, and he raised it under prevailing law at the time. If this court adopts Laffler, the question then becomes doesn't he have the right? I mean, one of those things he has to prove that the trial judge would have accepted was expressly refuted by this court at the time. So not only was he not on notice that he would have to prove it, Curry told him he didn't have to touch that subject. The fact of whether or not the state would withdraw it has never appeared before. So I think it's fundamentally unfair if this court adopts Laffler to make any decision other than this case needs to be remanded, where my client will have an opportunity to present evidence on those two factors. And what this court, I believe, really needs to focus on, because Laffler is a very, in my opinion at least, complicated, open opinion that is going to be hard for the circuit courts to apply. And I think the majority needs to be reminded that this burden on the defendant, while it is a reasonable probability, and that's sufficient to undermine confidence in the outcome, the Supreme Court in 2000 said it's a very low burden, less than a preponderance. And I'm not asking for sympathy for any criminal defendant at all. But regardless of their guilt or innocence of a particular crime, my client had no role in this either. I understand the state's frustration. They had no role in this problem. I understand the trial judge's frustration. They had no role in this problem. My client, again, regardless of whether he's guilty or innocent of the underlying charges, had no real role in this problem either because he received inadequate advice. Twelve, and I want to go back to one point real quick. It's not a question of whether it's consecutive. There's a significant difference between telling a criminal defendant that consecutive sentences are possible when they are in fact mandatory. That is not even on the same playing field. And the result, as my client got information, 12 to 30 instead of 12 to 90. But to your question directly, yes, Your Honor, I think fundamental fairness requires that it be remanded. However, if we don't think that there was a reasonable probability that he would have accepted the deal, then we don't send it back. Is that correct? I think it depends on how you do that. If we make that determination based upon the current record. If this Court determined that, I guess my answer to that, Your Honor, would be this. If this Court applied Curry and said he didn't even meet the Curry standard, then I guess that would be the end of the case. But if you agree that he met Curry, showing deficient advice from counsel, which I think he's clearly shown. And when we look at the objective factors that Curry lists, again, we can't look at his self-serving statements. Counteroffer of 12 when he thought it was 30. The strength of the case against him. The difference in the sentences he received. Curry explicitly says that. His sentence he received is 2.6 times longer than the offer, and it's 33% longer than he was told the maximum he faced was. So when we review all of those factors, this was not a close case. This jury deliberated in just over two hours, Your Honors. This was not a close case. You look at all those factors, I think you will find he met Curry. And we stand by the appellate court's opinion on that. When you, if you, once we reach that point, I think you do have to remand. Because fairness dictates that my client should be given an opportunity to show that there were no intervening circumstances between the time that the offer was made and it was rejected that would have caused the State to withdraw it. And the opportunity to show that the trial judge would have accepted this plea. I think the U.S. Supreme Court has granted cert in Burt v. Titlow out of Michigan. That is correct, Your Honor. Is there any reason we should wait to see what they do on that with regard to the remedies? I don't think so, and I'll tell you why. This is likely to arise, this type of case, this Laffer case is likely to arise in two situations that I can think of at least. One is where an offer is made in exchange for some future act on the part of the defendant, whether it be testimony against a co-defendant, testimony against a third party. That offer is rejected based on ineffective assistance of counsel. Conviction, you go up on appeal, you come back for your hearing. In the meantime, the individual that the primary defendant was going to testify against has already been acquitted. And that's the Titlow situation. They made an offer to testify against a co-defendant. She refused. The co-defendant was acquitted and ultimately passed away before the case was finally remanded. That's a much harder situation and not one that we're facing here today. This is the more simple case of the offer is made simply in exchange for your guilty plea. There's no future act or condition that could inhibit that. So I don't think this Court needs to wait on Titlow at all because I think it raises fundamentally different issues. In this case, it's much simpler. There is no, again, no future act that's required on the part of Mr. Hale to receive this offer. I want to point out one last thing as well. If this goes back for a hearing, I urge this Court, in 2009 this Court entered three decisions that I think are very important. People v. Patrick, people v. Terrell, and people v. Walker. These three cases together limited, or I say better defined, the discretion trial judges employ and enjoy. And when this goes back under Laffer, the trial judge is going to have a broad range of discretion. I encourage this Court to remind the Circuit Court of those cases, to compel the trial judge, if they deviate from the original offer, to put their reasons on the record or in writing. Because in that situation, the only remedy a client, like my client or one similarly situated, is going to have is the ability to appeal that based on the judge's abuse of discretion. And if those reasons for deviating aren't made part of the record, he's going to have no opportunity for meaningful appellate review of that discretion. Thank you, Your Honors. Your Honors. Yes. Before you get started. Sure. Are we left with what a Frye-Laffler hearing looks like? Is that what we're being asked to decide here? At least from opposing counsel's perspective? Not necessarily, Your Honors. I think that this case first asks what the appropriate analysis would be. How far do we have to extend Curry? That answer is simple. We have to follow Laffer and Cooper. Once we establish what the analysis is, then we have to apply it to these facts. The first threshold question is, was there deficiency? And that's a very difficult question. What I heard Mr. Stevenson saying was that if we are going to say that Laffer and Frye control, I heard that we should give direction to the trial court. Did you agree with the direction that he indicated during his argument? Not necessarily, Your Honor. I think Frye and Cooper are self-explanatory. I don't think that there's really any need to add an additional gloss to it. The question of the court's discretion is something that the court exercises on a routine basis, and it would be a matter of determining where the equities lie in the individual situation. First, to determine whether defendant has met his burden, and if he's met his burden, then to determine what, if any, of the remedies available are appropriate in this case, taking into consideration not just the prejudice suffered by defendant, but the potential harm to the state as well. And those are suggestions by the court. I think it would be, if not imprudent, at least unnecessary at this early juncture to set some standards when we're unfamiliar, at least, with the way these hearings are going to proceed. What the U.S. Supreme Court did was it said that it would allow the circuit court's time to work out what needs to be done in these types of situations. I think it's difficult to predict in one opinion what the various factual circumstances would entail. In that kind of hearing, would the state be required to disclose from their records what their understanding of the plea offer was? Potentially, yes. That would be part of the questioning, at least insofar as the portion of prejudice involving the state's acceptance and continuance with the plea. I think that would be a legitimate inquiry. With respect to counsel's suggestion that we send this back to another judge, that is entirely unnecessary and unsupported. In a typical trial scenario, usually when a plea offer is communicated and there is a close agreement, the matter goes to a 402 conference. That's the procedure set up by this Court's own rules. This case never made it to a 402 conference, and that in and of itself is further support for our position that this defendant didn't want to plead guilty under any circumstances. Are the 402 conferences held in every plea negotiation? Not in every plea negotiation, but a large portion of them, Your Honor, particularly where the parties are close, there's a real indication that the defendant wants to plead, but the parties and the defendant both want to assure themselves that the Court would be amenable to consideration of the close offer and acceptance that's being considered by the parties. Outside of Cook County that takes place? Yes, it takes place on a routine basis, Your Honor. And the fact that it's not present in this case is significant. Likewise, under that scenario, if the defendant and the State engage in a 402 conference before the judge, but the defendant decides not to plead, many times the matter is heard before the very same judge who had heard the 402 conference. That judge isn't prejudiced by hearing matters. The judge is expected and it's anticipated that the judge will only consider the evidence presented at trial as a means of establishing the defendant's guilt. And this is no different. Simply because the trial court here heard the information doesn't mean that the information gathered at trial and presented doesn't mean that this trial court, if this case is remanded, couldn't divorce himself or herself from that particular evidence and say, of course I would have accepted this 15 years. It's just a matter of placing the judge, himself or herself, in the original position at the time of the plea offer and rejection. This case has a chronology of analysis. First, the application of Fry and Cooper to Curry. Then the application of that law to the facts. It's the people's position that at that point, when we take a look at this record, defendant hasn't shown, other than by self-serving testimony, that's unclear and contradicted, that he actually would have accepted the plea. Despite the fact that counsel is emphasizing that this is an overwhelming evidence case, and of course anybody would have pled guilty to an overwhelming evidence case. We know that's not true here. In fact, this isn't just a defendant who decided to roll the dice at trial. This is a defendant who actually contacted one of the witnesses before trial and tried to pay that witness to not testify. This defendant had two people go up to that witness and try to get him to recant. This defendant also continuously pointed the finger at another man, claiming he was the shooter. The defense witness, who he presented at trial, had given police a statement that the defendant was the shooter. But then at trial, she flipped and all of a sudden was identifying somebody else. I would suggest to Your Honor that inferences can be drawn from this record, that this defendant is not the innocent, poor defendant to whom defense counsel suggests didn't know how to reject a plea under this bad advice. This is a defendant who wanted to go to trial. He wanted to manipulate the system and he wanted to take the risk. This is supported not just by the record inferences, but also by defense counsel's testimony at the hearing, explicitly stating that I talked to defendant about the possibility of consecutive sentences. But he didn't want to plead guilty. He wanted a trial. That's all we need to look at to determine that this defendant didn't meet that burden. And there is no reason to remand for the remainder of a showing. However, in the event that this court decides that this defendant has shown at least that threshold showing of prejudice with respect to but for counsel's advice I would have pled guilty, I do agree with defense counsel that the appropriate remedy is not for this court to decide the issue of what the judge would have done and what the prosecutor would have done. The record is entirely silent because as defense counsel mentioned, there was no hearing testimony on that point because it was not a point of analysis at the time of the hearing in this case. The correct remedy under those circumstances would be to remand the case to the very same trial judge to continue this hearing to allow defendant the opportunity, should he be able to, meet those further demands in a showing of prejudice. It's for these reasons and others expressed in our brief that we ask that this court reverse the appellate court's judgment and at the same time, rather than remanding, affirm the judgment of the circuit court. Thank you. Thank you. Case number 113140, People v. Clearth or Hale is taken under advisement as agenda number two. Mr. Marshall, we're going to take about a ten-minute break. The Illinois Supreme Court stands in recess until 1030.